```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                       SOUTHEASTERN DIVISION

PAMELA CARMICHAEL,              )
                                )
             Plaintiff,         )
                                )
     v.                         )      No. 1:09 CV 123 DDN
                                )
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social Security,)
                                )
             Defendant.         )
```

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Pamela Carmichael for Disability Insurance Benefits and Supplemental Security Income (SSI) under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401, <u>et seq.</u> The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c). (Doc. 7.) For the reasons set forth below, the ALJ's decision is affirmed.

## I. BACKGROUND

Plaintiff, who was 42 years old at the time, filed an application for disability benefits and SSI benefits on March 14, 2005, alleging disability due to back and neck injuries, left knee problems, and carpal tunnel syndrome. (Tr. 319, 396, 419.) Plaintiff alleged an October 11, 2002 onset date, which was later amended to February 8, 2005. (Tr. 908.) Her claims were denied initially and on reconsideration. On December 6, 2006, a hearing was held before an Administrative Law Judge (ALJ) who denied relief on June 25, 2007. (Tr. 945-52.) On August 18, 2009, the Appeals Council denied relief, making the ALJ's decision the final decision of the Commissioner.

## II. MEDICAL BACKGROUND

On August 15, 2000 plaintiff saw Trent Lamb, M.D., complaining of pain in the ribs, back and leg. His assessment was lower lumbar pain; possible herniated disc or bulging disc with inflammation and radiculopathy, a description of a problem in which one or more nerves are affected and do not work properly; and muscle strain of the left chest wall. She was given Vioxx, a nonsteroidal anti-inflammatory drug; and Medrol, a steroid; and scheduled for a CT scan. (Tr. 134.) An August 16, 2000 CT scan of the lumbar spine was taken. Danses included a free disc fragment, which is a piece of spinal disc that breaks away from the main disc structure; a conjoined nerve root; an ectatic nerve root sheath; and a neoplasm or tumor. An MRI was advised. (Tr. 130-31.)

An August 24, 2000 MRI of plaintiff's lumbar spine was normal, and she was released to work without restriction. (Tr. 192-93.) On August 29, 2000, plaintiff saw Dr. Lamb again for continued back pain. His assessment was probable mild pulled muscle, for which he prescribed over-the-counter anti-inflamatories and Tylenol. Dr. Lamb expressed concern about drug seeking behavior as plaintiff immediately requested narcotic medication. (Tr. 163.)

On October 18, 2000 plaintiff was treated for neck, back and left leg pain following a motor vehicle accident. (Tr. 196.) October 23, 2000 MRIs of the cervical and lumbosacral spine showed no abnormality. (Tr. 194.) She was prescribed a muscle relaxant, heat, Vioxx, lumbar support, a Transcutaneous Electrical Nerve Stimulation (TENS) unit, home exercises, and chiropractic care. (Tr. 195.)

On February 14, 2001, Mark E. Lazenby, D.C., a chiropractor, wrote that he had successfully treated plaintiff's headaches, pain, sciatica, and muscular injuries. He opined that she had a degree of degenerative disc disease in her lumbar spine and a possible conjoined nerve root that would likely cause future problems. She was released from Dr. Lazenby's care and no assignment of disability or permanent impairment was made regarding her September 2000 injuries. (Tr. 199.) Dr. Lazenby's final

diagnoses were spinal subluxation,[1] cervicalgia or neck pain, tension headaches, muscle spasms, and lumbar sciatica.[2] (Tr. 200.)

Plaintiff was treated various times at the Monette Family Practice Clinic in Monette, Arkansas. On May 11, 2001, she was treated for left knee pain. (Tr. 160.) On August 23, 2001, she was treated for back pain. (Tr. 159.) Records dated February 3, 2003 indicate she was diagnosed with low back pain, depression, stress urinary incontinence, Gastroesophageal Reflux Disease (GERD) and high blood pressure. She was given refills for Hydrocodone, a narcotic pain reliever and cough suppressant, and Valium. (Tr. 154.) She had also been seen there for anxiety. (Tr. 156-58.)

Records of Dennis D. Parten, M.D., of the Monette Clinic dated July 29, 2003 through August 24, 2004, indicate plaintiff was treated for cold symptoms, knee pain, back pain, pelvic pain, urinary incontinence, migraine headaches, high blood pressure, Chronic Obstructive Pulmonary Disease (COPD), and carpal tunnel syndrome. (Tr. 221-38.) Medications included Hydrocodone and Valium. (Tr. 545.) She was seen by Dr. Parten on March 7, 2006 and May 5, 2006, for low back pain, chronic pain, and pain management, at which time she was taking Valium, Hydrocodone, and Soma, a pain reliever. She was short of breath and placed on Advair Diskus, a prescription medication used to treat asthma and other breathing problems. (Tr. 494-98.) She saw Dr. Parten for follow-up from August 24, 2004 through November 18, 2005. (Tr. 499-520.)

On November 15, 2004, plaintiff saw Thomas M. Ward, M.D., for a consultative examination at the request of the state agency. She complained of a history of back pain with numbness and tingling in the

---

[1] Subluxation is an incomplete dislocation. The normal relationship is altered, but there is still some contact between joint surfaces. Stedman's Medical Dictionary 1856 (28th Ed. 2006).

[2] Sciatica is pain in the lower back and hip, radiating down the back of the thigh into the leg, usually due to a herniated lumbar disk. Stedman's at 1731.

-3-

legs. Her medications included Valium, Hydrocodone, and Albuterol, a prescription inhaler used to treat asthma. (Tr. 239.) She had difficulty standing on either leg independent of the other and rising from a squatting position. Dr. Ward's impression was complaints of low back pain without substantiated findings for deficits in her neurological condition and/or orthopedic instability and multiple components of other past medical problems. He found no findings compatible with a disabling condition. (Tr. 240.)

On July 6, 2005, plaintiff saw Roger Cagle, M.D., for a consultative examination. (Tr. 673.) She had a reduced range of motion in her spine. (Tr. 676.) Dr. Cagle's diagnoses were back pain and degenerative joint disease (DJD). (Tr. 679.) An x-ray revealed DJD of the lumbar spine and slight scoliosis or curving of the spine. (Tr. 680.)

On May 16, 2006, plaintiff was treated at Twin Rivers Medical Center for a mild foot injury. (Tr. 664-669.)

On June 19, 2006, plaintiff saw Price Gholson, LPC, PsyD., for a mental Medicaid examination. (Tr. 655.) Dr. Gholson diagnosed mood disorder due to chronic back pain with depressive features and assigned a GAF score of 40.[3] (Tr. 660.) Gholson recommended that she be approved for access to medical care. (Tr. 662.)

On June 20, 2006, Patrick LeCorps, M.D., performed a Medicaid

---

[3]

A GAF score, short for Global Assessment of Functioning, helps summarize a patient's overall ability to function. A GAF score has two components. The first component covers symptom severity and the second component covers functioning. A patient's GAF score represents the worst of the two components.

On the GAF scale, a score from 31 to 40 means there is impairment in reality testing or communication (such as speech that is at times illogical, obscure, or irrelevant), or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (such as depressed, avoids friends, neglects family, and is unable to work). A score of 31 represents worse than serious symptoms. American Psychiatric Association <u>Diagnostic and Statistical Manual of Mental Disorders</u> 32-34 (4th ed. 2000).

examination. He could not come up with a diagnosis, but opined that she may have some psychological overlay or fibromyalgia.[4] She had tenderness at L5-S1 where the disc space was a little bit narrower. He recommended an MRI to determine whether her orthopedic problem was "legitimate." (Tr. 645.)

Records from the Steele Family Health Clinic dated July 25, 2006, through February 12, 2009, show that plaintiff was treated for chronic abdominal and back pain, chronic diarrhea, COPD, depression, anxiety, and allergies. (Tr. 522-31, 682-703, 761-82, 881-90.)

On August 28, 2006, testing revealed increased sensation in the bladder with reduced bladder volume. Diagnoses were urinary stress incontinence and severe dyspareunia or painful intercourse. (Tr. 489.) October 2, 2006 testing revealed gastritis, or inflammation of the stomach lining, and several small polyps in the lower sigmoid colon. (Tr. 484.) On October 4, 2006, she was treated for gastroenteritis, or inflammation of the gastrointestinal tract. (Tr. 478.)

On November 9, 2006, Shahid K. Choudhary, M.D., a neurologist, evaluated plaintiff for tremors occurring over the past five years. Plaintiff indicated that the tremors worsened with stress. She complained of low back pain, feeling depressed and anxious, and of losing control of the left leg and falling at times. (Tr. 708.) Dr. Choudhary's impression was radiculopathy on the left side. Dr. Choudhary opined that she most likely had nerve root compression in the lumbar region. She also had benign essential tremors.[5] Dr. Choudhary saw no evidence to suggest Parkinson's Disease. Dr. Choudhary opined that

---

[4] A common syndrome of chronic widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbances; the cause is unknown. Stedman's at 725.

[5] Essential tremor, which sometimes runs in families, is one of the most common types of tremor. It is shaking that is most noticeable when doing something like lifting a cup or pointing at an object. WebMD, http://www.webmd.com/parkinson's disease/tc/tremor-topic-overview (last visited December 28, 2010).

-5-

treatment of her depression would improve her tremors. (Tr. 709.) An MRI of the lumbar spine on November 20, 2006 showed mild degenerative disc disease and mild disc protrusion but without any evidence of spinal stenosis or narrowing of the spinal canal. (Tr. 711.)

On March 5, 2007, plaintiff was treated for chronic sinusitis. (Tr. 752.) On March 23, 2007, a bone density study of her lumbar spine showed early osteoporosis. (Tr. 741.) She was also treated that day for an ankle strain. (Tr. 742.)

On April 27, 2007, H. Livermore, M.D., treated plaintiff her for chronic sinusitis and a deviated nasal septum. (Tr. 713-14.) On June 1, 2007, she underwent surgery to repair the deviated nasal septum and nasal obstruction. (Tr. 716-17.)

On June 21, 2007, Dr. Choudhary wrote that plaintiff had right foot pain. He opined that her symptoms were somewhat atypical for neuritis or inflammation of the nerves, and started her on an antidepressant to see if her symptoms improved. (Tr. 706.)

On July 21, 2007 plaintiff was treated at Twin Rivers Medical Center for COPD and dyspnea, or difficult or labored respiration. (Tr. 727.)

On July 15, 2008, plaintiff saw Syed Nasir, M.D., at the Pemiscot Memorial Health Center for chronic low back pain. He diagnosed chronic low back pain due to displacement of the lumbar disc and prescribed Lyrica, a medication used to treat pain caused by nerve damage due to diabetes, shingles, and fibromyalgia. On July 23, 2008, she received a steroid injection for her chronic low back pain. (Tr. 785.)

On October 29, 2008, plaintiff saw Dr. Gholson complaining of depression and anxiety. Dr. Gholson diagnosed major depressive disorder and panic disorder with agoraphobia and assigned a GAF score of was 45.[6]

---

[6]
A GAF of 41 through 50 is characterized by serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).

Dr. Gholson opined that plaintiff had a mental disability preventing her from engaging in employment or gainful activities. (Tr. 795.)

From November 13-15, 2008, plaintiff was hospitalized at Twin Rivers Regional Medical Center with acute worsening of COPD, fibromyalgia, and anxiety disorder. (Tr. 866-67.) Records from the Visiting Nurse Association of Southeast Missouri dated November 19 and 25, 2008 indicate that plaintiff was housebound due to shortness of breath and difficulties walking. (Tr. 826-60.)

**Testimony at the Administrative Hearing**

A hearing was conducted before an ALJ on November 6, 2006. Plaintiff testified to the following. (Tr. 902-41.) She has back problems which have been treated with narcotic medication in the past, and for which she currently uses a recliner with heat massage. (Tr. 918-22.) She has COPD, for which she uses an inhaler. (Tr. 922-23.) She currently smokes a pack of cigarettes per day, and used to smoke two packs per day. (Id.) She has left leg pain related to her back problem. (Tr. 923.) She is depressed, but has never received counseling or therapy, and she has never been hospitalized for a mental impairment. (Tr. 924.)

Plaintiff has insomnia. (Tr. 929.) She spends her time watching TV. She is sometimes able to bathe and groom, but requires help at other times. (Tr. 930-31.) She also helps take care of her disabled husband. (Tr. 931.) She does not cook, with the exception of simple meals such as Ramen noodles and sandwiches. (Tr. 931-32.) Her daughter helps with house cleaning, laundry, and shopping. (Tr. 932.) She rarely drives. (Tr. 933.) She can sit at a computer for 10 or 15 minutes at a time and stand for 10 to 15 minutes. (Tr. 934.) She cannot walk more than a block before having to stop. Some days are better than others. (Tr. 935.) She is unable to lift more than 10 pounds and has difficulty bending. (Tr. 935-37.) She sometimes falls because she loses her balance. (Tr. 939.)

She sometimes has difficulty getting a gallon of milk out of the refrigerator. (Tr. 939.)

### III. DECISION OF THE ALJ

On June 25, 2007, the ALJ issued an unfavorable decision. (Tr. 44-56.) The ALJ found that plaintiff has not engaged in substantial gainful activity at any time relevant to her decision. The ALJ found plaintiff suffered from the following severe combination of impairments: gastritis, benign colon polyps, complaints of back pain, and diagnoses of anxiety and depression. The ALJ also found that she did not have an impairment or combination of impairments that meets or medically equals one of the listings. (Tr. 948-49.)

The ALJ found that plaintiff can stand and walk for six out of eight work hours; sit throughout the work day; push and pull on arm and leg controls; lift and carry out at least 20 pounds occasionally and 10 pounds frequently; understand, remember and carry out at least simple tasks; and maintain her concentration on simple tasks. (Tr. 949.)

The ALJ found that plaintiff's combined impairments included anxiety and depression, but that her reported mental impairment did not cause any impairment of her daily activities, and no more than mild impairment of her social functioning or concentration, persistence, or pace. (Tr. 949.) The ALJ then determined that plaintiff's combination of impairments, including depression and anxiety, would limit her to understanding, remembering, and carrying out simple tasks and maintaining the concentration necessary for simple tasks. (Tr. 949.)

The ALJ found that plaintiff had past relevant work (PRW) as a cashier, and described this job as "very light work of a simple nature" as generally performed in the national economy. (Tr. 950.) The ALJ found that plaintiff can perform her PRW as a cashier. The ALJ found that plaintiff was not disabled because she did not sustain her burden of proving that she cannot perform her PRW. (Id.) The ALJ found that considering her age, education, work experience, and the functional abilities she possesses, there are jobs that exist in significant numbers

in the national economy that she can perform.

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's final decision is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least 12 months. See 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A). A five-step regulatory framework governs the evaluation of disability in general. See 20 C.F.R. §§ 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003). If the Commissioner finds that a claimant is disabled or not disabled at any step, a decision is made and the next step is not reached. 20 C.F.R. §§ 404.1520(a)(4).

## V. DISCUSSION

Plaintiff argues the ALJ erred in (1) determining that she could perform her PRW as a cashier; and (2) in assessing her credibility.

**A.    Past Relevant Work**

-9-

Plaintiff argues the ALJ erred in determining that she could perform her PRW as a cashier because the ALJ did not make detailed findings as to the physical and mental demands of her past work and did not properly consider the evidence of her physical and mental limitations. She argues the ALJ made a conclusory finding that she can work as a cashier without support from vocational expert (VE) testimony or a source such as the Dictionary of Occupational Titles (DOT). The court disagrees.

The ALJ found that plaintiff's PRW included the job of cashier. (Tr. 950.). The ALJ described this job as "very light work of a simple nature." (Tr. 950.) This is consistent with the DOT description of the job of "Cashier II." See U.S. Dept. Of Labor, DOT #211.462 (1991). The DOT lists the job of Cashier II as a light exertional level job with a specific vocational preparation (SVP) level of two. "Light" work for purposes of the DOT is defined the same as light work under SSA regulations. See 20 C.F.R. §§ 404.1567(b), 416.967(b). In addition, an SVP level of two in the DOT corresponds to unskilled work as defined in Social Security Ruling (SSR) 00-4p.

Other record evidence supports the ALJ's characterization of plaintiff's PRW. In a February 7, 2005 decision, another ALJ noted that the VE described plaintiff's PRW as a cashier/cook as "light, unskilled work." (Tr. 20.) The earlier decision relied on VE testimony, contained in the record, which described the demands of plaintiff's job as a cashier as entry level (unskilled) and light exertional level work. (Tr. 20, 286). The undersigned concludes substantial evidence supports the ALJ's description of plaintiff's PRW as a cashier as light, unskilled work and, therefore, the ALJ's description of plaintiff's PRW was not in error.

**Mental Impairments**

Plaintiff argues the ALJ did not fully consider her mental impairments. She argues that while the ALJ acknowledged her treating physician's diagnoses of anxiety and/or depression, as well as her

-10-

psychiatric medications, the ALJ then found these examinations were unremarkable and not supported by appropriate medical findings. She argues the ALJ's conclusory findings fail to comport with social security rulings and case law.

The ALJ found that plaintiff's combined impairments included anxiety and depression. (Tr. 948.) The ALJ found that plaintiff's mental impairments, although not severe by themselves, were severe in combination with the remainder of her impairments. (Tr. 948-49.) The ALJ found that plaintiff's reported mental impairment did not cause any impairment of her daily activities, and no more than mild impairment of her social functioning or concentration, persistence, or pace. (Tr. 949.) The ALJ then determined that plaintiff's combination of impairments, including depression and anxiety, would limit her to understanding, remembering, and carrying out simple tasks and maintaining the concentration necessary for simple tasks. (Tr. 949.)

The undersigned concludes ALJ's decision is supported by substantial evidence. As the ALJ noted, the record evidence showed plaintiff was periodically diagnosed with anxiety and/or depression at the Steele Family Clinic. (Tr. 525, 527, 531, 683, 685, 697, 699, 703, 770, 772, 776, 778, 948.) However, her treatment notes also indicate that her judgment and/or insight were normal, her memory was intact, and she did not display depression or anxiety on examination. (Tr. 494, 503, 506, 509, 522, 524, 526, 528, 530, 592, 682, 684, 686, 688, 690, 692, 694, 696, 698, 700, 702, 763, 765, 767, 769, 771, 773, 775, 777, 779, 881, 883, 885, 887, 892, 894, 896, 898, 900.) The largely normal examination findings support the ALJ's conclusion that plaintiff's impairments would impose only mild functional restrictions. See Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990)(the mere presence of a mental disturbance is not disabling per se, absent a showing of severe functional loss establishing an inability to engage in substantial gainful activity).

The ALJ also noted that plaintiff's mental health treatment history was inconsistent with disabling mental impairments. (Tr. 948-49.)

-11-

Plaintiff was not hospitalized for psychiatric reasons during the relevant period, nor was she under the care of a mental health professional. (Tr. 949.) See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000)(citing Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990) ("[t]he absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in [claimant's] mental capabilities disfavors a finding of disability.").

The record evidence includes reports from two examinations performed by Dr. Gholson in June 2006 and October 2008 for the purpose of disability evaluation, at which time he assigned plaintiff GAF scores of 40 and 45. (Tr. 655-62, 794-95, 800-05.) The ALJ did not cite Dr. Gholson's June 2006 report in her decision.

Gholson was not a treating source, therefore his reports were not entitled to any significant weight. See Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) (it is well settled that the report of a consulting physician who has seen the claimant only once is of little significance by itself). Dr. Gholson did not have a treating relationship with plaintiff and the examinations were completed for the purpose of obtaining medical coverage. Although it would have been preferable for the ALJ to have discussed Dr. Gholson's June 2006 report in her decision, her failure to do so does not mean that it was not considered. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)(citing Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995)(ALJ's failure to cite specific evidence does not indicate that such evidence was not considered).

With respect to Dr. Gholson's October 2008 report, the Appeals Council indicated that, although it was considered, it did not serve as a basis to change the ALJ's decision. (Tr. 293, 296.) Based on the above, the undersigned concludes substantial evidence as a whole supports the ALJ's determination that plaintiff's mental impairments would not prevent her from performing simple, unskilled work.

**Physical Impairments**

Plaintiff also argues the ALJ failed to consider some of her physical impairments, specifically her back pain and COPD. The ALJ found that plaintiff's back pain was a severe impairment. (Tr. 948.) However, the ALJ found that plaintiff's limitations due to her back pain were not as severe as alleged. (Tr. 948.) June 2006 x-rays of plaintiff's spine showed "no disc space narrowing, no spondylolisthesis, spondylolysis, or facetitis. (Tr. 645, 948.) An MRI of plaintiff's lumbar spine in November 2006 showed "mild" degenerative disc disease and a "mild" disc protrusion without any evidence of spinal stenosis or narrowing. (Tr. 711.) The ALJ noted that Patrick Lecorps, M.D., opined that the objective findings did not provide a clear basis to explain her reported pain. (Tr. 645, 948.) Although Dr. LeCorps opined that fibromyalgia could be an explanation, plaintiff did not consistently report muscle pain. (Tr. 690, 692, 694, 696, 698, 700, 702, 763, 765, 771, 773, 779, 781, 883, 885, 887.) Although plaintiff was diagnosed with fibromyalgia when hospitalized for other reasons in November 2008, examination reports did not document any tender points consistent with fibromyalgia.[7] (Tr. 866-71.)

Plaintiff also had complaints related to COPD. However, in July 2007, plaintiff had no sign of conversational shortness of breath and her oxygen saturation[8] was 98 percent on room air. (Tr. 727.) Her COPD recurred in November 2008 and "dramatically improved" with medication. (Tr. 866.) A chest x-ray showed no evidence of acute cardiopulmonary disease. (Tr. 876.) After two days, plaintiff's oxygen saturation was 96 percent on room air. (Tr. 866.) Moreover, plaintiff continued to

---

[7] A patient must have at least 11 out of 18 tender spots to be diagnosed as having fibromyalgia. Stedman's at 725.

[8] Oxygen saturation measures how much of the hemoglobin in the red blood cells is carrying oxygen (O2). Web MD http://www.webmd.com/lung/arterial-blood-gases. (Last visited December 28, 2010.)

smoke a pack of cigarettes per day at the time. (Tr. 869.)  Records from treating sources describe occasional cough, shortness of breath, or wheezing, but do not contain persistent reports of respiratory distress, and generally describe normal respiratory findings and no shortness of breath. (Tr. 503, 506, 509, 512, 515, 522, 524, 526, 528, 684, 688, 692, 694, 698, 700, 702, 763, 767, 771, 773, 775, 781, 881, 883, 894, 898.) Based on the above, the undersigned concludes substantial evidence supports the ALJ's finding that COPD was not a severe impairment.

Plaintiff also argues the ALJ erred in failing to consider evidence from her prior application.  However, the ALJ did not consider the earlier evidence because that period of time was already adjudicated by another ALJ who determined that plaintiff was not disabled in a Feebruary 7, 2005 decision.  (Tr. 9-21.)

The previous determination that plaintiff was not disabled is administratively final.  See 20 C.F.R. §§ 404.981, 416.1481.  Thus, the only issue before the ALJ in this case was whether plaintiff was disabled after February 7, 2005.  The ALJ explained this to counsel and plaintiff at the December 6, 2006 hearing.  (Tr. 908.)  Plaintiff also complains the earlier ALJ decision discussed impairments not discussed in this decision.  However, an ALJ is not bound by the findings of a prior administrative determination which was based on a claimant's disability status at that time.  See Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001)(citing Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000)).

**B.    Credibility**

Plaintiff argues the ALJ's credibility analysis is not in accord with Eighth Circuit law.  The undersigned disagrees.

The Eighth Circuit set forth the standard courts should follow when evaluating subjective complaints in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).  Polaski holds that the ALJ must consider "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." Id.

at 1322.  Another factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence.  Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008).  The ALJ is not required to discuss each Polaski factor as long as "he acknowledges and considers the factors before discounting a claimant's subjective complaints."  Moore v. Astrue, 572 F.3d 520, 524 (8th Cir. 2009).  If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."  Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).

The ALJ here found that plaintiff was not fully credible.  The ALJ discussed a number of factors, supported by the record, that detracted from the credibility of plaintiff's subjective complaints.  The ALJ noted that plaintiff's complaints of disabling pain were not well supported by the objective medical evidence.  (Tr. 949.)  At the administrative hearing, plaintiff testified that she had a herniated disc.  (Tr. 918.) However, as the ALJ observed, the objective medical records showed no evidence of a herniated disc in plaintiff's spine.  (Tr. 949.)  See Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004)(citing Tennant v. Apfel, 224 F.3d 869, 871 (8th Cir. 2000) (a lack of objective medical evidence is a factor an ALJ may consider in determining a claimant's credibility). In light of the lack of supporting medical evidence, the ALJ noted that there was some indication that plaintiff may be exaggerating her complaints to obtain medication. (Tr. 950.)  Moreover, plaintiff was unable to explain at the hearing why she told her physicians that she had a herniated disc, when the record demonstrated she did not. (Tr. 918-21, 950.)  Plaintiff had also previously been admonished about drug seeking behavior.  (Tr. 569, 950.)  An ALJ may properly consider a claimant's exaggeration of her symptoms in evaluating her subjective complaints. See Jones v. Callahan, 122 F.3d 1148, 1152 (8th Cir. 1997).

Also, as discussed above, the absence of treatment with a mental health specialist also weighed against plaintiff's subjective complaints

-15-

as to her mental health symptoms. (Tr. 924, 949.) See Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992). Plaintiff's work record also failed to support her credibility. She has a history of low earnings, with total yearly wages surpassing $10,000 only twice. (Tr. 61-62, 950.) An ALJ may discount a claimant's credibility based upon her poor work record. See Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996)(plaintiff's prior work history characterized by fairly low earnings and significant breaks in employment casts doubt on his credibility); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996)(sporadic work record failed to support plaintiff's credibility).

The ALJ also noted that plaintiff helped care for her disabled husband. (Tr. 931, 950.) The fact that plaintiff was able to care for her disabled husband was inconsistent with her subjective complaints. Cf. Brown v. Barnhart, 390 F.3d 535, 541 (8th Cir. 2004) ("The ALJ considered testimony by Brown that seemed inconsistent with limitations caused by the kind of pain Brown said she had, including that . . . she acted as the primary caregiver of her daughter with cerebral palsy, helping her bathe and tending to her needs whenever the part-time assistant was not present.").

Based on all of these factors, the ALJ determined that plaintiff's subjective complaints were not fully credible. (Tr. 949-50.) The court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence. Accordingly, the ALJ's credibility finding is affirmed.

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**
Signed on January 24, 2011.